# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

SEAUN LLWELLYN FARTHING, )
)
Petitioner, )
)
v. ) Civil Action No. 3:16CV759–HEH
)
JAMES V. BEALE, )
)
Respondent. )

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss)

Seaun Llwellyn Farthing, a Virginia inmate proceeding *pro se,* filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court of the City of Newport News, Virginia ("Circuit Court"). Respondent has moved to dismiss. (ECF No. 12.) Farthing has responded. (ECF No. 16.) For the reasons that follow, the Motion to Dismiss will be granted.

## I. PROCEDURAL HISTORY

Farthing was indicted and, following a bench trial, convicted of one count of attempted breaking and entering, one count of attempted malicious wounding, two counts of use of a firearm in commission of a felony, one count of maliciously discharging a firearm in an occupied dwelling, one count of possession of a firearm by a felon, and one misdemeanor count of brandishing a firearm. (ECF No. 14–3, at 2, 4.)

The Court of Appeals of Virginia aptly summarized the evidence of Farthing's guilt as follows:

[T]he evidence presented at trial established that Carl Warner arrived at a boarding house where he lived on the third floor. Upon entering the house, Warner stopped briefly on the second floor and spoke with Ramona White, until White's boyfriend, appellant, arrived shortly thereafter. Warner then proceeded to his room on the third floor.

"Not long [there]after" Warner heard "loud noises" as well as someone screaming. He also heard "someone coming up the steps, asking, 'Where is she at?'" Warner walked toward his door in order to look into the hallway. As he reached for his door, Walker described the door as imploding in on him. "The top hinge came off and the door sort of came into . . . [his] body. At that time[,] [Warner] saw [appellant] point a weapon at [him] . . . a big silver gun." As Warner attempted to shut the door, he heard the gun discharge. He described it as "almost simultaneously as [he] reached for the knob." Warner shouted to appellant from behind the door that he was going to call the police; as Warner dialed 911, he heard "a person run down the steps . . . ." Warner hid in his room until the police arrived.

. . . .

Warner testified during appellant's trial, as described above. Warner reiterated that it was appellant who pointed a gun in Warner's face. Warner had observed appellant at the boarding house on previous occasions and was "able to recognize [appellant]" during the incident. Warner "ha[d] no doubt in [his] mind" and was "positive" in his identification of appellant.

Another resident of the boarding house, Larry Johnson, also testified for the Commonwealth. Johnson testified that he was in his room on the second floor of the boarding house when White "came and asked to use [his] phone." While White was using his phone, Johnson observed appellant approach White and begin hitting her in the face and head. Johnson tried to pull appellant off White but stopped when he saw that appellant had a gun. Johnson then returned to his room. After "it got quiet," Johnson "looked back out in the hallway, and [he saw appellant] was laying [on the floor] in front of [White's] door." Appellant appeared to be sleeping or passed out. "Everything was quiet" for the next "twenty to thirty minutes," when Johnson described hearing a noise like "maybe somebody [falling]." Warner later came down the steps to the second floor and Johnson learned that Warner's door had been kicked in.

Officer Andrew Amarillo testified that he was dispatched in response to Warner's 911 call. He described approaching Warner's room and finding "[t]he door [to Warner's room] was actually off its hinges." Officer Amarillo "had to force the door open to make contact with" Warner. After securing the scene and making contact with Warner, Officer Amarillo "locate[d] one [shell] casing right in front of the door [to Warner's room]." "There [was] a hole in the doorknob . . . just above the doorknob [with a bullet lodged in it], and there [was] a break in the . . . doorknob."

2

White testified on behalf of the appellant. She denied that appellant was at the boarding house on the day in question. Rather, she testified that she received a visit on that day from an individual named George Blackwell. White denied having a confrontation or fight with Blackwell. Asked during cross-examination if she had approached Warner or Johnson after the incident and had asked them to recant their testimony, White denied having done so.

Appellant testified on his own behalf. He denied being at the boarding house during the day in question. He also denied owning a firearm. He admitted that he had two prior felony convictions.

Following appellant's testimony, the Commonwealth recalled Warner and Johnson as rebuttal witnesses. Warner testified that White approached him after the incident, apologizing for appellant's behavior and explaining that appellant "had been drinking and smoking" on the day in question. Johnson testified he was also approached by White, who asked that Johnson not testify.

(*Id.* at 1–3 (alterations in original).)

Following an unsuccessful direct appeal and state petition for a writ of habeas corpus, Farthing filed this instant § 2254 Petition. Farthing demands relief upon the following grounds:

| | |
|---|---|
| Claim 1 | (a) Commonwealth witness Carl Warner committed perjury. |
| | (b) Commonwealth witness Larry Johnson committed perjury and testified to matters unrelated to the charged offenses. |
| | (c) Trial counsel was ineffective for failing to impeach Warner and Johnson about their perjured testimony and preserve the issue for appeal. |
| | (d) Trial counsel failed to file a motion for discovery to obtain information about the Commonwealth's witnesses and the scene of the crime that would have been favorable to the accused. |
| Claim 2 | Counsel was ineffective for failing to move to sever the charge of possession of a firearm by a convicted felon. |
| Claim 3 | Counsel was ineffective for failing to argue that a rented room inside a boarding house is not a dwelling house for purpose of proving burglary. |
| Claim 4 | Counsel was ineffective for failing to argue that attempted burglary with intent to commit assault and battery is a lesser included offense of attempted malicious wounding with intent to maim. |
| Claim 5 | Counsel should have cross-examined Detective Snapp. |
| Claim 6 | Counsel failed to object to Johnson's perjured testimony that Farthing hit White with a gun. |

3

| | |
|---|---|
| Claim 7 | Counsel failed to file a motion for discovery which would have resulted in the Commonwealth turning over evidence required under *Brady v. Maryland*, 373 U.S. 83 (1963).[1] |
| Claim 8 | Counsel should have argued that a rented room did not constitute a dwelling house. |
| Claim 9 | Counsel should have argued that Farthing could only be convicted of one count of use of a firearm because he only fired a single shot. |
| Claim 10 | Counsel should have objected to the prosecutor's vouching for the Commonwealth's witnesses and stating that Farthing's witness, Ramona White, had lied. |
| Claim 11 | Counsel's errors, in the aggregate, denied Farthing the effective assistance of counsel. |

Respondent asserts that a number of Farthing's claims are procedurally defaulted. In a somewhat discordant fashion, Farthing suggests that the ineffective assistance of counsel constitutes cause to excuse his defaults. Given the utter lack of merit of Farthing's claims and the current state of the law, judicial efficiency dictates simply proceeding to the merits of Farthing's claims rather than attempting to untangle the procedural provenance of the claims and then deciding whether review is warranted. *Martinez v. Ryan*, 566 U.S. 1, 21–22 (2012) (Scalia, J., dissenting) (observing that as "a consequence of today's decision the States will always be forced to litigate in federal habeas, for all defaulted ineffective-assistance-of-trial-counsel claims (and who knows what other claims) . . . the validity of the defaulted claim (where collateral-review counsel was not appointed)").

## II. ANALYSIS

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant

---

[1] This claim is largely redundant of Claim 1(d).

4

must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

## A. Alleged Perjury by the Commonwealth's Witnesses

In Claims 1(a), 1(b), 1(c), and 6, Farthing contends that Carl Warner and Larry Johnson committed perjury and that counsel acted deficiently by failing to pursue the issue. To prove a violation of due process based on false testimony, a petitioner must prove his conviction was "obtained through use of false evidence, known to be such by representatives of the State." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted); *see United States v. Tanner*, 61 F.3d 231, 236 (4th Cir.1995) (requiring a defendant to prove "the prosecution knew or should have known at trial" that testimony was false in order to establish a Due Process violation (citing *Napue*, 360 U.S. at 269)). A convicted defendant bears a "heavy burden" in demonstrating that a witness testified falsely. *United States v. Griley*, 814 F.2d 967, 971 (4th Cir.1987). Mere variations or inconsistencies in a witness's testimony fail to demonstrate the witness testified falsely, much less that the prosecution knew the witness testified falsely. *Tanner*, 61 F.3d at 236;

5

*Griley*, 814 F.2d at 971 (citing *Overton v. United States*, 450 F.2d 919, 920 (5th Cir. 1971)).

To support his assertion that Warner committed perjury, Farthing directs the Court to minor discrepancies between Warner's testimony at trial and Warner's testimony at the preliminary hearing, and also the initial police report. Farthing's trial counsel utilized some of these variations in Warner's testimony to attempt to impeach Warner at trial. Warner, however, supplied fairly convincing explanations for any variance in his testimony.

The Court has reviewed the entirety of the trial transcript and the preliminary hearing transcript. The minor variances in Warner's testimony fail to demonstrate that Warner testified falsely. Further, counsel was not deficient for failing to pursue such a claim or for not pursuing any additional impeachment Farthing urges here. The State Habeas Opinion (ECF No. 14–10) contains a more detailed discussion as to the many instances where Farthing charged that the witnesses lied and why such charges lack merit. For example,

> petitioner contends Warner's preliminary hearing testimony that he did not give police the name of his assailant on the night of the shooting is contradicted by police reports that show he told police it was White's boyfriend, "Shawn." Petitioner alleges Warner's preliminary hearing testimony that he did not hear a knock on his door before it was forced open is contradicted by police reports that show he initially told police he did hear a knock before his door was forced open. Petitioner alleges Warner's preliminary hearing testimony that after petitioner shot at the door Warner "fell up against the wall right next to the door" contradicted his trial testimony that after the shot he "lean[ed] to the side and started yelling" that he was calling the police. Petitioner further alleges Warner's preliminary hearing testimony that he slammed his door shut after petitioner forced it open contradicted his trial testimony that the door would not shut all the way and he had to hold it closed. Petitioner also alleges Warner's preliminary hearing testimony that no part of petitioner's body

entered his room contradicted his trial testimony that petitioner's hand broke the threshold of his door.

*State Habeas Op.* 4–5. The Supreme Court of Virginia accurately observed that:

> The record, including the trial transcript, demonstrates counsel focused his cross-examination of Warner on his ability to view the perpetrator in the brief moment the door was open. Counsel reasonably could have determined Warner's identification of petitioner as his assailant was the most crucial portion of his testimony and the other inconsistencies in his testimony were minor, did not establish Warner was committing perjury, and would not be useful in impeaching his identification of petitioner.

*Id.* at 5.

Farthing's charge that Johnson committed perjury is even thinner than his claim that Warner lied. Farthing bases his charge that Johnson lied on the fact that Farthing's girlfriend, Ramona White, denied that Farthing had attacked her and the absence of physical evidence corroborating that White had been attacked. These facts fail to provide any viable basis for concluding that Johnson committed perjury. Further, contrary to Farthing's assertion, Johnson's testimony that Farthing had struck White earlier in the evening was highly relevant to the case against Farthing. The fight confirmed that Farthing was angry with White and explained why Farthing went to Warner's room looking for White. As Farthing has demonstrated neither deficiency nor prejudice, Claims 1(a), 1(b), 1(c), and 6 will be dismissed.

### B. Alleged Failure to Discover Exculpatory Information

In Claims 1(d) and 7, Farthing faults counsel for failing to file a motion for discovery to obtain information about the Commonwealth's witnesses and the scene of the crime that would have been favorable to Farthing. "The record, including the affidavit of trial counsel, demonstrates counsel decided not to file a discovery motion

7

because the Commonwealth had an open file policy, which was only applicable when defense counsel waived formal discovery. Counsel determined the open file policy provided him with greater access to the Commonwealth's evidence." *State Habeas Op.* 2, ECF No. 14–10. Additionally, Farthing presents no plausible allegations of what favorable evidence such a motion would have unearthed. Thus, Farthing fails to demonstrate deficiency or prejudice. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory testimony); *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (requiring proffer of mitigating evidence to state a claim of ineffective assistance). Claims 1(d) and 7 will be dismissed.

### C. Failure to Move to Sever

In Claim 2, Farthing contends that counsel was ineffective for failing to move to sever the charge of possession of a firearm by a convicted felon so that the trier of fact would not be biased by Farthing's criminal record. Here, Farthing was tried by a judge. "A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." *Eckhart v. Commonwealth*, 279 S.E.2d 155, 157 (Va. 1981) (citing *Flannery v. City of Norfolk*, 218 S.E.2d 730, 735 (Va. 1975); *Akers v. Commonwealth*, 216 S.E.2d 28, 31 (Va. 1975)). In rejecting this claim, the Supreme Court of Virginia noted:

> petitioner elected to testify at trial, as a result of which petitioner's status as a convicted felon would have been presented to the trial court whether or not counsel moved to sever the charges. Under the circumstances, counsel reasonably determined there would be no benefit to having the charge of possession of a firearm by a convicted felon tried separately.

*State Habeas Op.* 4 (citing *Eckhart*, 279 S.E.2d at 157). As Farthing has demonstrated neither deficiency nor prejudice, Claim 2 will be dismissed.

### D. Failure to Raise Legal Challenges

In Claims 3 and 8, Farthing complains that counsel was ineffective for failing to argue that a rented room inside a boarding house is not a dwelling house for the purpose of proving burglary. In rejecting this claim, the Supreme Court of Virginia observed:

> Petitioner was convicted of burglary, in violation of Code § 18.2–91, which, in conjunction with Code§ 8.01–90, prohibits entering a dwelling house in the nighttime with intent to commit assault and battery or larceny. The Court of Appeals of Virginia held in *Hitt v. Commonwealth*, 43 Va. App. 473, 481–82, 598 S.E.2d 783, 787 (2004), that the statutory definition of a "dwelling house" under Code § 18.2–90 did not include "individual rooms or compartments within ... a 'residence' that are not 'dwelling houses' in and of themselves (such as a rented room within a larger dwelling, intended to be the place of habitation/residence for the individual residing therein)." Counsel reasonably could have determined the definition of a dwelling house articulated in *Hitt* encompassed Warner's individual room in the boarding house, it was not necessary to have an investigator establish that fact, and any argument to the contrary would have been futile.

*Id.* at 8–9. This decision puts to rest Farthing's assertion that counsel acted deficiently or that counsel's conduct prejudiced Farthing. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, ... a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."). Claims 3 and 8 will be dismissed.

Next, in Claim 4, Farthing asserts that counsel was ineffective for failing to argue that attempted burglary with intent to commit assault and battery is a lesser included offense of attempted malicious wounding with intent to maim. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person

shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend V. "Among the protections guaranteed by this clause is protection against multiple punishments for the same offense." *United States v. Johnson*, 32 F.3d 82, 84 (4th Cir. 1994) (citation omitted). The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Namely, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . ." *Id.* "This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes . . . .'" *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

The crimes of attempted burglary with intent to commit assault and battery and attempted malicious wounding clearly require proof of an additional fact which the other does not. *See Robertson v. Commonwealth*, 525 S.E.2d 640, 644 (Va. Ct. App. 2000) (setting forth the elements for burglary which requires, *inter alia*, breaking and entering); *Crawley v. Commonwealth*, 492 S.E.2d 503, 505 (Va. Ct. App. 1997) (observing that in "order to convict an accused of attempted malicious wounding, the Commonwealth must prove that the accused: . . . intended to 'maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill'"

(quoting Va. Code Ann. § 18.2–51)). Accordingly, because Farthing fails to demonstrate deficiency or prejudice, Claim 4 will be dismissed.

### E. Failure to Cross-Examine Detective Snapp

In Claim 5, Farthing criticizes counsel for not cross-examining Detective Snapp. Farthing notes that Johnson testified that he told Detective Snapp that he "saw the Petitioner use a key and come up the steps to the second floor. Detective Snapp didn't record that on the night of the date in question nor did [Johnson] discuss the issue with Detective Snapp when she showed [Johnson] the photospread." (ECF No. 2, at 14 (capitalization corrected).) First, counsel could not cross-examine Detective Snapp as Detective Snapp never testified at Farthing's trial. Second, counsel reasonably declined to call Detective Snapp as a defense witness because a review of Detective Snapp's Probable Cause Affidavit (ECF No. 1–1) reflects that she would largely have corroborated Johnson's testimony. As Farthing demonstrates neither deficiency nor prejudice, Claim 5 will be dismissed.

### F. Failure to Challenge Convictions on Multiple Firearm Counts

In Claim 9, Farthing asserts that counsel should have argued that Farthing could only be convicted of one count of use of a firearm because he only fired a single shot. As explained by the Supreme Court of Virginia, this assertion lacks merit:

> [Virginia] Code 18.2–53 prohibits the use, attempted use, or threatening display of a firearm in the commission of certain felonies and the actual firing of the weapon is not necessary. Further, a defendant may "be convicted and sentenced for more than one charge under Code § 18.253.1 even though the charges arose from a single incident," because "[i]t is the identity of the offense and not of the act which is dispositive." *Winston v. Commonwealth*, 268 Va. 564, 607, 604 S.E.2d 21, 45 (2004) (quoting *Flythe v. Commonwealth*, 221 Va. 832, 834-35, 275 S.E.2d 582, 583-84 (1981)). Counsel reasonably could have determined any argument to the

11

contrary would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*State Habeas Op.* at 9–10 (alteration in original). Accordingly, Claim 9 will be dismissed.

### G.  Alleged Bolstering and Vouching

In Claim 10, Farthing faults counsel for not objecting when the prosecutor stated that White lied and impermissibly bolstered and vouched for the Commonwealth's witnesses. With respect to his complaints about the prosecution's questioning of White, the Supreme Court of Virginia noted:

> The record, including the trial transcript, demonstrates Johnson and Warner testified petitioner visited White at the boarding house on the day of the shooting. White testified petitioner did not visit her, that her visitor had been George Blackwell, a friend from "way back." She had seen Blackwell at the store earlier in the day and invited him to her room for drinks. The prosecutor cross-examined White, asking if she were lying and establishing she did not know where Blackwell lived, could not recall the last time she had seen him, and had not told police about him. White became combative and told the prosecutor it was his job to find Blackwell, to which the prosecutor responded "[t]o find someone who does not exist?" The prosecutor subsequently asked White if she had created Blackwell.

*Id.* at 10–11. This Court agrees with the Supreme Court of Virginia that "[t]rial counsel reasonably could have determined this cross-examination, while vigorous, was not impermissibly argumentative or aggressive and that any objection to the contrary would have been futile." *Id.* at 11.

Farthing contends that the prosecutor impermissibly vouched for the Commonwealth's witnesses when he stated, "There's no reason to not believe anything that the witnesses had to say. . . . [T]here's no reason why . . . they would make this

12

up . . . ." (Oct. 10, 2013 Tr. 106.) The Supreme Court of Virginia aptly explained the lack of merit for this claim:

> The record, including the trial transcript, demonstrates the prosecutor made this statement in the context of an argument that there was no evidence adduced at trial that Johnson and Warner had any motive for lying about petitioner. Counsel could reasonably have determined the prosecutor's argument was based on the evidence at trial, *Elliot v. Warden of the Sussex I State Prison*, 274 Va. 598, 618, 652 S.E.2d 465, 483 (2007), and did not improperly express a "personal opinion on the credibility of" the witnesses. *Jones v. Commonwealth*, 218 Va. 732, 737, 240 S.E.2d 526, 530 (1978). Counsel thus reasonably could have determined any objection would have been without merit.

*State Habeas Op.* 11. Because Farthing has not demonstrated deficiency or prejudice, Claim 10 will be dismissed.

### H. Cumulative Analysis

In Claim 11, Farthing contends that the cumulative effect of counsel's errors resulted in prejudice. Farthing's attempt to demonstrate cumulative prejudice fails, as none of counsel's actions were constitutionally deficient. *Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998) ("[A]n attorney's acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996))). Accordingly, Claim 11 will be dismissed.

Finally, the Court notes that it is not always clear whether Farthing is challenging the prosecutor's conduct directly or faulting counsel for not raising an objection to the prosecutor's conduct. Where appropriate, the Court has considered Farthing's claims as free standing claims of prosecutorial misconduct. Nevertheless, Farthing fails to

demonstrate the prosecutor acted improperly. Furthermore, considering the compelling evidence of Farthing's guilt, no reasonable probability of a different result exists.

### III. CONCLUSION

Farthing's claims will be dismissed. The Motion to Dismiss (ECF No. 12) will be granted. The § 2254 Petition will be denied. The action will be dismissed. The Court will deny a certificate of appealability.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: July 7, 2017
Richmond, VA